UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CURTIS TRAMMELL, CHRISTOPHER BRYANT CRABTREE, CYNTHIA DEMOTT, DAVID DEMOTT, ARCHIE PARSLEY, CHRISTOPHER ANDERSON, and RAINBOW RIVER KAYAK ADVENTURES, LLC,

Plaintiffs,

v. Case No: 5:26-cv-419-JSS-PRL

CSX TRANSPORTATION, INC., TRACK LINE RAIL, LLC, and FLORIDA NORTHERN RAILROAD COMPANY, LLC,

Defendants.
___________________________________/

**ORDER**

Plaintiffs, Curtis Trammell, Christopher Bryant Crabtree, Cynthia Demott, David Demott, Archie Parsley, Christopher Anderson, and Rainbow River Kayak Adventures, LLC, move to remand this putative class action to the Circuit Court of the Fifth Judicial Circuit in Marion County, Florida. (*See* Dkts. 20, 37, 38.) Defendants CSX Transportation, Inc. and Florida Northern Railroad Company, LLC oppose the motion. (*See* Dkts. 27, 28, 41.) Defendant Track Line Rail, LLC has not appeared in this action. Upon consideration, for the reasons outlined below, the court denies Plaintiffs' motion to remand.

## BACKGROUND

This case concerns railroad ties, which Plaintiffs describe as "large wooden beams that hold railroad tracks in place." (Dkt. 1-1 ¶ 44.) Plaintiffs allege that "[a]lmost all railroad ties used in the United States are treated" with the toxic chemical creosote to "keep [the] wood from rotting." (*Id.*) Purportedly, railroad ties that are no longer fit for use must be disposed of with care given the toxicity of the creosote. (*Id.* ¶ 45.) Plaintiffs identify the "standard disposal methods" for railroad ties as "dumping at landfills" and "burning at specified waste-to-energy facilities," but they report that "some rail operators have begun grinding railroad ties into wood chips or mulch for fuel" as a cost-saving measure. (*Id.*) Plaintiffs assert that such grinding "may increase . . . environmental and health risks" because the process "breaks the ties apart and releases creosote into the surrounding air, water, and ground." (*Id.*) CSX and Florida Northern allegedly "engaged or permitted . . . Track Line to grind railroad ties for disposal." (*Id.* ¶ 46.)

According to Plaintiffs, Track Line started grinding railroad ties in Newberry, Alachua County, Florida, in January 2025. (*Id.* ¶ 50.) Plaintiffs claim that the grinding occurred "in the open air, outdoors, and uncovered, without any city, county, or state permits," even though Track Line knew that permits were required. (*Id.*) Allegedly, in April and May 2025, landowners complained about dust and fumes from Track Line's grinding operations, and the City of Newberry and Alachua County issued orders requiring Track Line to cease the grinding. (*Id.* ¶¶ 52–55.) Plaintiffs report that Track

Line thereafter moved its grinding operations to a property in Dunnellon, Marion County, Florida, owned by CSX and leased by Florida Northern. (*Id.* ¶ 59.) According to Plaintiffs, the property was located "between two residential communities" and "less than one . . . mile from natural springs" and a protected river. (*Id.* ¶¶ 60–61.) Track Line purportedly "unloaded several hundred tons of . . . creosote-treated railroad ties . . . onto the [p]roperty." (*Id.* ¶ 60.)

Plaintiffs allege that by October 2025, mounds of unprotected railroad ties "stretched approximately [five hundred] feet along Florida Northern's tracks" and within one thousand feet of the protected river. (*Id.* ¶ 68.) Plaintiffs further allege that in October 2025, the City of Dunnellon and Marion County notified CSX and Track Line of code violations, prohibited them from grinding or shredding railroad ties or bringing additional railroad ties onto the property, and ordered them to remove accumulated railroad ties by November 2025 deadlines. (*Id.* ¶¶ 70, 76.) According to Plaintiffs, Defendants did not remove the railroad ties as required. (*See id.* ¶ 117.) In fact, despite numerous communications from municipal officials to Defendants, including a December 4, 2025 letter from the Marion County Fire Chief that warned of specific fire hazards caused by the railroad ties, the railroad ties reportedly remained on the property until "a large fire broke out" on February 1, 2026. (*Id.* ¶¶ 87, 89, 109.)

Plaintiffs claim that the fire "released large plumes of thick, noxious black smoke, smoldering ashes, and pieces of railroad ties for miles," (*id.* ¶ 110), prompting the City of Dunnellon to "issue[] a temporary local state of emergency," (*id.* ¶ 113). Residents in the area reportedly "complained of foul odors and low visibility for days." (*Id.* ¶ 114.)

According to Plaintiffs, although the fire was extinguished on February 3, 2026, (*id.* ¶ 119), serious health risks caused by exposure to the creosote and other chemicals released by the fire remain, (*see id.* ¶¶ 122–35). These health risks are allegedly varied, for example affecting the respiratory, cardiovascular, reproductive, and endocrine systems and including cancers, skin conditions, liver and kidney problems, cognitive impairment, loss of consciousness, and death. (*Id.* ¶¶ 127–28, 132–35.) Plaintiffs seek to hold Defendants liable for the fire and for the damages resulting from the fire, including the health risks. (*See id.* ¶ 145.)

Given Defendants' purported misconduct, Trammell and Crabtree initiated this case in February 2026 in Florida state court by filing an eight-count class action complaint. (Dkt. 1-3 at 4–51.) Trammell and Crabtree sued each Defendant for negligence, strict liability, private nuisance, public nuisance, trespass, trespass to chattels, and gross negligence / willful and wanton conduct and sought various forms of monetary relief, including the costs of establishing a medical monitoring regime in light of the health risks related to the fire. (*Id.* at 25–51.) The initial complaint defined three classes: a resident class, a property-owner class, and an employee class. (*Id.* at 16.) In May 2026, Trammell and Crabtree filed an amended class action complaint that added Plaintiffs, defined an additional class (the business class), and renamed the gross negligence / willful and wanton conduct count as an intentional misconduct and/or gross negligence count. (*See* Dkt. 1-1.) Otherwise, the amended complaint asserts substantially the same causes of action and seeks substantially the same relief as the initial complaint. (*See id.*)

Plaintiffs define their classes as follows. The resident class includes "all individuals who resided within a [thirty]-mile radius" of the site of the fire "from February 1, 2026, to the present." (*Id.* ¶ 148.) The property-owner class consists of "all individuals or legal entities who owned or otherwise had a legal interest in real property located within a [thirty]-mile radius" of the site of the fire "from February 1, 2026, to the present." (*Id.* ¶ 149.) The employee class includes "all individuals who worked within a [thirty]-mile radius" of the site of the fire "from February 1, 2026, to the present." (*Id.* ¶ 150.) The business class consists of "all individuals or legal entities who owned or operated a business located within a [thirty]-mile radius" of the site of the fire "from February 1, 2026, to the present." (*Id.* ¶ 151.) Six exclusions apply to these class definitions: (1) "Defendants and any of their affiliates, parents[,] or subsidiaries," (2) "all employees of Defendants," (3) "all persons who make a timely election to be excluded" from the classes, (4) "the judges assigned to this case, their immediate families, and court staff," (5) "insurers and insurance syndicates whose claims for damages regarding the [fire] and resulting toxic chemical contamination[] arise out of a right of subrogation," and (6) "claims of physical manifestation of personal or bodily injury." (*Id.* ¶¶ 152–53.)

Overall, Plaintiffs assert that "Defendants' negligent, careless, reckless, and/or intentional conduct" exposed Plaintiffs to "dangerous levels of toxic chemicals and their byproducts." (*Id.* ¶¶ 20, 23.) In June 2026, CSX and Florida Northern removed this case to federal court pursuant to the Class Action Fairness Act (CAFA). (Dkt. 1 at 5–11.) Plaintiffs request remand based on CAFA's local controversy exception (LCE).

(*See, e.g.*, Dkt. 20 at 3–15.) To support their LCE argument, Plaintiffs submitted their own declarations, (*see* Dkt. 20-6), as well as affidavits by attorney Melissa Goldman describing methodologies that she used to determine the citizenships of class members, (*see* Dkts. 20-7 to 20-12).

**APPLICABLE STANDARDS**

Typically, when ruling on motions to remand, district courts "constru[e] removal statutes strictly and resolv[e] doubts in favor of remand." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006). That said, in the class action context, "CAFA's language favors federal jurisdiction," and "CAFA's legislative history suggests that Congress intended the [LCE] to be a narrow [exception], with all doubts resolved in favor of exercising jurisdiction." *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (quotation omitted). To establish federal jurisdiction under CAFA in this case, "the number of members of all proposed plaintiff classes in the aggregate" must equal or exceed one hundred, 28 U.S.C. § 1332(d)(5)(b), any member of the plaintiff class must be diverse in terms of citizenship from any defendant (a requirement known as minimal diversity), 28 U.S.C. § 1332(d)(2)(A), and the aggregate of the claims of individual class members must exceed $5 million, "exclusive of interest and costs," 28 U.S.C. § 1332(d)(2), (6). *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007) (stating these threshold requirements for CAFA jurisdiction). Although courts generally look to the complaint when considering CAFA's threshold requirements, "a removing defendant [may make] specific factual allegations establishing jurisdiction and . . . support [the allegations] (if challenged by the plaintiff or the court) with

evidence" and logical reasoning. *Pretka v. Kolter City Plaza II, Inc.*, 608 F. 3d 744, 754 (11th Cir. 2010). "When the complaint does not claim a specific amount of damages, removal from state court is jurisdictionally proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Id.* (alteration adopted) (quoting *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).

A defendant "seeking to remove a case to federal court bears the burden of establishing federal jurisdiction," *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1241 (11th Cir. 2013) (citing *Evans*, 449 F.3d at 1164), but a plaintiff seeking remand under a statutory exception to CAFA jurisdiction, such as the LCE, must prove the requirements of the exception by a preponderance of the evidence, *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1155 (11th Cir. 2021). The LCE may apply when more than "two-thirds of the members of all proposed plaintiff classes in the aggregate" are "citizens of the [s]tate in which the action was originally filed." *Simring v. GreenSky, LLC*, 29 F.4th 1262, 1267 (11th Cir. 2022) (quoting 28 U.S.C. § 1332(d)(4)(A)(i)(I)). Plaintiffs may fulfill this requirement by "limit[ing] the class definition to citizens of a certain state" or "provid[ing] evidence of the class members' state of residence as well as evidence showing their intent to remain in that state." *Id.* (quoting *Smith*, 991 F.3d at 1156–57). "Plaintiffs are not expected to account for all class members" but must proffer sufficient evidence to carry their burden of proof. *Toll v. Fla. Power & Light Co.*, 701 F. Supp. 3d 1286, 1293 (S.D. Fla. 2023) (quotation omitted). Once the removing

defendant establishes federal jurisdiction by proving the number of class members, minimal diversity, and the amount in controversy, the burden shifts to the plaintiff to prove that an exception such as the LCE applies. *See Evans*, 449 F.3d at 1165.

## ANALYSIS

Plaintiffs do not dispute that CSX and Florida Northern have met CAFA's threshold requirements. (Dkt. 20 at 4.) Rather, Plaintiffs contend that the LCE requires remand and removal was procedurally defective because Track Line did not consent. (*See id.* at 3–18.) Neither contention is persuasive. The court first confirms that CAFA's jurisdictional requirements are satisfied. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[R]emoval jurisdiction is no exception to a federal court's obligation to inquire into its own jurisdiction."). The court then discusses the LCE and consent to removal.

### A. CAFA's Jurisdictional Requirements

CAFA "broadens diversity jurisdiction by establishing lower threshold requirements" in certain class actions. *Lowery*, 483 F.3d at 1193. Pursuant to CAFA, federal courts have subject matter jurisdiction over class actions with "(1) at least [one hundred] class members, (2) minimal diversity, and (3) an amount in controversy exceeding" $5 million. *Simring*, 29 F.4th at 1266. CSX and Florida Northern bear the burden of proving these jurisdictional requirements by a preponderance of the evidence. *Pretka*, 608 F.3d at 752.

To begin, Plaintiffs allege that "[w]hile the exact number of [c]lass [m]embers is unknown," the "proposed [c]lass includes thousands of individuals and organizations." (Dkt. 1-1 ¶ 158.) This allegation fulfills the requirement of at least one hundred class members. *See Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 & n.7 (11th Cir. 2010) (explaining that CAFA's class size requirement was satisfied when the complaint did not "specifically allege" the class size but contained allegations indicating that the class consisted of thousands of members); *Williams v. Dollar Gen. Corp.*, No. 2:22-cv-656-ECM (WO), 2023 WL 2703998, at *4, 2023 U.S. Dist. LEXIS 53768, at *9 (M.D. Ala. Mar. 29, 2023) (concluding that an allegation of a class "comprised of thousands of individuals" adequately "establishe[d] the requisite class size" for CAFA jurisdiction (quotation omitted)); *cf. Pretka*, 608 F.3d at 748–49 & n.6, 751, 774 (reversing the district court's decision to remand the case to state court based on the amount in controversy, and noting that the class size requirement was uncontested when the complaint alleged a class containing more than three hundred members); *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 923 (11th Cir. 2019) (reversing the decision to remand, and stating: "[The defendant]'s notice of removal alleged that all three CAFA requirements were satisfied. [The plaintiff] does not dispute that . . . the proposed class contain[ed] over [one hundred] Georgia residents.").

Next, minimal diversity requires only that "any member of a class of plaintiffs is a citizen of a [s]tate different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "To determine whether minimal diversity exists, courts consider the citizenship of all the class members (including putative), both named and unnamed." *Smith*, 991 F.3d at

1149 (citing 28 U.S.C. § 1332(d)(1)(D)). Citizenship is determined as of "the filing date of the complaint or amended complaint" or—"if the initial pleading does not state facts supporting federal jurisdiction"—"the date plaintiffs serve 'an amended pleading, motion[,] or other paper[] indicating the existence of federal jurisdiction.'" *Id.* (quoting 28 U.S.C. § 1332(d)(7)). Here, minimal diversity exists because Trammell, an individual domiciled in Florida, is a Florida citizen and Track Line, a limited liability company (LLC) headquartered in Texas and organized under Texas law, is a citizen of Texas only. (*See* Dkt. 1-1 ¶¶ 3, 34.) *See* 28 U.S.C. § 1332(d)(10) (providing that for CAFA purposes, "an unincorporated association," such as an LLC, "shall be deemed to be a citizen of the [s]tate where it has its principal place of business and the [s]tate under whose laws it is organized"); *Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 673 n.2 (4th Cir. 2018) (noting, when individuals brought a class action against LLCs, that "[b]ecause the plaintiffs [we]re North Carolina citizens, and [one of the LLCs was] a citizen only of Ohio, CAFA's minimal diversity requirements [we]re met").

Finally, to satisfy CAFA's amount in controversy requirement, the aggregate amount in controversy must exceed $5 million. 28 U.S.C. § 1332(d)(6). "Where, as here, the plaintiff has not [pleaded] a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams*, 269 F.3d at 1319. In such cases, removal is proper if it is "facially apparent from the complaint" that the amount in controversy exceeds the jurisdictional requirement. *Id.* Otherwise, "the court should look to the notice of removal and may require evidence relevant to the

amount in controversy at the time the case was removed." *Id.* Here, the amount in controversy is not apparent from the face of the amended complaint. (*See* Dkt. 1-1.) Accordingly, CSX and Florida Northern rely on initial disclosures Plaintiffs submitted in Florida state court, which indicate that Plaintiffs seek to recover an amount in excess of $100 million for punitive damages alone. (*See* Dkt. 1 at 8.) Given this demand, CSX and Florida Northern have met their burden as to the amount in controversy. *See Anderson*, 943 F.3d at 928–29 (determining that CAFA's $5 million amount in controversy requirement was satisfied when the plaintiff demanded relief "valued at over $75 million").

Because the threshold requirements for CAFA are satisfied, this class action falls within the court's subject matter jurisdiction.

**B. The Local Controversy Exception (LCE)**

The LCE "is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole." *Evans*, 449 F.3d at 1163 (quotation omitted). Pursuant to the LCE, a court "shall decline to exercise jurisdiction" over a class action when a plaintiff establishes four requirements: (1) "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the [s]tate in which the action was originally filed," (2) at least one defendant is a significant defendant, meaning that class members seek "significant relief" from the defendant, the defendant's "alleged conduct forms a significant basis for the claims asserted," and the defendant "is a citizen of the [s]tate in which the action was originally filed," (3) "principal injuries resulting from the alleged conduct or any related conduct of each

defendant were incurred in the [s]tate in which the action was originally filed," and (4) "during the [three]-year period preceding the filing of th[e] class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A).

The parties agree that the third and fourth LCE requirements are satisfied. Plaintiffs' principal injuries allegedly occurred in Florida. Specifically, Plaintiffs allege that this class action arises from a fire that occurred in Central Florida, and the injury zone is limited to damages within thirty miles of the fire. (*See* Dkt. 20 at 14.) *Cf. Offill v. Cent. R.R. Co. of Ind.*, 791 F. Supp. 3d 787, 803 (S.D. Ohio 2025) ("[The plaintiff] alleges that a tanker car parked in Whitewater Township, Ohio, leaked styrene gas into the air, causing local officials to evacuate thousands of individuals located within a one-half mile radius. And she claims [that] those local Ohio residents suffered negative health consequences and lost wages as a result. Those allegations smack of a localized controversy." (record citations omitted)). Additionally, according to the parties' notices of actions related to this case, (*see* Dkts. 7, 12, 13, 15, 17, 31, 32, 33), no other class actions asserting similar allegations against Defendants were filed during the three-year period prior to this action. *See Corsino v. Perkins*, No. CV 09-09031 MMM (CWx), 2010 WL 317418, at *4, 2010 U.S. Dist. LEXIS 10009, at *11 (C.D. Cal. Jan. 19, 2010) (examining a notice of pendency of related actions when deciding whether the fourth requirement was met). Thus, the third and fourth LCE requirements are met.

Next, Plaintiffs contend that greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of Florida. Yet Plaintiffs did not

define their proposed classes by identifying the citizenship of putative class members. (S*ee* Dkt. 1-1 at 28–29.) "In cases where plaintiffs do not base citizenship on the class definition, they must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state." *Smith*, 991 F.3d at 1157. Indeed, "residency does not equate to citizenship," *id.*, and this distinction is especially relevant in Florida, where many people reside for only part of the year, *id.* at 1158 ("[C]itizens of other states may live part of the year in Florida . . . but maintain a permanent residence elsewhere.").

To support their LCE arguments regarding this issue, Plaintiffs filed declarations attesting to their own Florida citizenship (*see* Dkt. 20-6), along with affidavits by Plaintiffs' attorney Melissa Goldman describing her methodologies for determining other class members' respective citizenships (*see* Dkts. 20-7 to 20-12). Goldman relied on data from the United States Census Bureau, including the 2020 census, the 2020–2024 American Community Survey, and the 2023 Longitudinal Employer-Household Dynamics (LEHD) Origin-Destination Employment Statistics (LODES) database. (*See, e.g.*, Dkt. 20-8 at 3–5; Dkt. 20-10 at 3–4; Dkt. 20-12 at 4.) Plaintiffs maintain that "[b]ecause federal data cannot prove intent to remain, Plaintiffs used Florida state voting data" only "to corroborate" citizenship for the resident class. (Dkt. 20 at 6–7.)

For the reasons explained by CSX and Floridan Northern, (*see* Dkt. 27 at 4–15; Dkt. 28 at 4–10), Plaintiffs have not met their burden of establishing the citizenship of the putative class. The named Plaintiffs provided their own declarations —representing only seven of the thousands of potential class members—in addition to attorney

statements that, in essence, present expert opinions about the putative class. Further, "generalized studies and surveys" that predate "the relevant time period" by years are insufficient to establish citizenship for the LCE. *Smith*, 991 F.3d at 1157. To establish the LCE, plaintiffs must provide evidence of specific facts from which the court can find citizenship. *Id*. Yet the data upon which Goldman relied for her opinions amounts to generalized research which is insufficient to prove citizenship without additional specific facts. *See id.* The data also substantially predates the February 1, 2026 fire, whereas each class is defined from that date to the present. (Dkt. 1-1 ¶¶ 148–51.)

Even presuming that Plaintiffs have presented sufficient evidence to show that two-thirds of the class members are Florida residents, the generalized data submitted is insufficient to demonstrate the class members' intent to remain in the state. Plaintiffs provided declarations of Florida citizenship, including intent to remain, from less than one percent of class members. At best, then, the data establishes current residency and does not account for the class members' intent to remain in Florida. *See Toll v. Fla. Power & Light Co.*, 701 F. Supp. 3d 1286, 1295–97 & n.6 (S.D. Fla. 2023) (concluding that LCE requirements were not met where declarations supporting citizenship were submitted for only twenty percent of the putative class). Consequently, Plaintiffs have not met their burden regarding the citizenship of the class.

Likewise, Plaintiffs have failed to establish that at least one Defendant is a significant defendant to satisfy the second LCE requirement. "[A] class seeks significant relief against a defendant when the relief sought against that defendant is a significant portion of the entire relief sought by the class." *Evans*, 449 F.3d at 1167

(quotation omitted). The significant defendant analysis may entail comparing the relief sought from local defendants to that sought from out-of-state defendants. *Id.* Here, the facts before the court give rise to the inference that CSX is not a significant defendant because the amended complaint does not distinguish between Defendants but seeks liability for all claims against all Defendants. (*See* Dkt. 1-1; *see also* Dkt. 6 at 5–6 (arguing that the amended complaint should be dismissed as a shotgun pleading because it does not distinguish among Defendants); Dkt. 9 at 7–8 (same).) When the court compares the relief sought from CSX, the local defendant on which the motion to remand depends for its LCE arguments, (*see* Dkt. 20 at 9–13), and the relief sought from Track Line, the out-of-state defendant, the court cannot conclude that CSX is a significant defendant. *See Lemy v. Direct Gen. Fin. Co.*, 559 F. App'x 796, 798 (11th Cir. 2014) (affirming the denial of a motion to remand under the LCE when the "complaint d[id] not distinguish between . . . relief sought against the local as opposed to the foreign defendants"); *see also Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1094–95 (8th Cir. 2021) (deeming "collective allegations against [the d]efendants" insufficient for the LCE's significant defendant requirement because "[s]uch collective allegations leave doubt about the comparative significance" of the local defendant's actions (quotation omitted)).

Thus, Plaintiffs have not met their burden of establishing the LCE requirements by a preponderance of the evidence. As a result, the court declines to apply the exception.

**C. Consent to Removal**

Plaintiffs maintain that remand is warranted due to a defect in the removal process. (Dkt. 20 at 15–20.) According to Plaintiffs, Track Line's failure to timely consent to removal bars removal jurisdiction. (*Id.* at 15.) Under CAFA, class actions "may be removed to federal court by 'any defendant without the consent of all defendants.'" *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (quoting 28 U.S.C. § 1453(b)). "The language of CAFA is plain that any single defendant can remove (without the consent of the other defendants) the entire class action (not merely the claims against that defendant)." *Lowery*, 483 F.3d at 1196 (quoting *Braud v. Transp. Serv. Co.*, 445 F.3d 801, 808 (5th Cir. 2006)); *Miedema*, 450 F.3d at 1329 (explaining that CAFA "clearly suspends the well-established rule of unanimity" for class action removals). Unanimity was not required to remove this class action to federal court, and the court perceives no procedural defect in the removal by CSX and Florida Northern.

## CONCLUSION

CAFA's jurisdictional requirements are satisfied, Plaintiffs have not met their burden with respect to the LCE—a narrow exception, with all doubts resolved in favor of exercising jurisdiction—and CAFA does not require Track Line's consent for removal. Having determined that the court has jurisdiction under CAFA and that the LCE does not apply, the court declines to address any remaining bases for subject matter jurisdiction discussed by the parties. Accordingly, Plaintiffs' motion to remand (Dkt. 20) is **DENIED**.

**ORDERED** in Orlando, Florida, on November 23, 2026.



JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties